BOARD OF CO. COM'RS OF VALENCIA Co. and others *v.* ATCHISON, T.
& S. F. R. Co.

Filed March 29, 1886.

1. TAXATION—LEASED PROPERTY—ASSESSMENT.
    Under Comp. Laws N. M. § 1812, providing that property under a lease
    shall be taxed to the lessor unless listed by the lessee, property under a rail-
    road lease cannot be properly assessed to lessee company operating the road
    under the lessor's charter.[1]

2. SAME—FAILURE TO RETURN—LISTED BY ASSESSOR.
    Comp. Laws N. M. 1884, §§ 2822–2824, require the assessor to exact from
    each taxable inhabitant of the county a list and description in detail of all
    his property, real and personal. Id. § 2825, provides that, upon the failure of
    any person to return such list, the assessor shall make it out according to the
    best information he can obtain. *Held* that, while the law does not require
    such list by the assessor to be strictly accurate, or the valuations to be cor-
    rect, yet it is essential to the validity of the tax that some description or list
    be made. The assessment of the property of a railroad company, real and
    personal, for one year in a single item as $1,000, and in other years in two
    items, real and personal property, each at $250,000, is void.

3. SAME—SUIT TO ENJOIN COLLECTION—TENDER.
    In a suit to enjoin the collection of taxes, when the original assessment was
    void, there is no necessity for a tender of such sum as might be equitably due
    on account of such taxes.[1]

Error to district court, Bernalillo county.

*E. A. Fiske* and *H. L. Warren,* for plaintiff in error.

*H. L. Waldo* and *James Hagerman,* for defendants in error.

HENDERSON, J.    The Atchison, Topeka & Santa Fe Railroad Com-
pany filed a bill in the district court of Valencia county against the
board of commissioners of that county, Patrocino Luna, sheriff and
collector of taxes, and C. C. McComas, district attorney of the Sec-
ond district. The object of the bill was to enjoin the collection of
certain alleged illegal taxes levied against it. The bill states that
the Atchison, Topeka & Santa Fe Railroad Company is a Kansas rail-
road corporation, duly authorized to do business in this territory;
that the New Mexico & Southern Pacific Railroad Company is a New
Mexico company, organized and existing under its laws; that the New
Mexico & Southern Pacific Railroad Company, under its charter, con-
structed a railroad, beginning at a point in the Raton Pass in the
northern portion of the territory, extending south through Valencia
county to San Marcial, in Socorro county, completing its line to San
Marcial in the year 1880. The bill further avers that by reason of
the construction of said line of road the company became and was,
as to all its property, exempt from taxation for the period of six years
from 1880, the year of its completion, under an act of the legislature
passed in 1878. It is further alleged that the complainant company,
soon after the completion of this line of road, entered into a contract of
lease with the New Mexico & Southern Pacific Company, by the terms
and conditions of which all the property of the latter company was
turned over to the possession of the former; and that the complain-
ant had ever since been in the possession of said line of road, and

[1] See note at end of case.

all its property, operating it as a common carrier under the charter of the lessor company, and discharging fully and faithfully its obligations and duty to the public as a railroad corporation; that all the property embraced in the several pretended tax assessments belong to the New Mexico & Southern Pacific, and not to the Santa Fe Company, except articles mentioned in an exhibit attached to the bill, of the value of $183.12, of which the assessors had made no list or description whatever in their return to the county board. It is further alleged that the assessments for the years 1881, 1882, and 1883 are each and all void for two reasons: *First,* because the property attempted to be assessed consisted of lands which were in no manner described, and personal property of various kinds, and different values, while the assessments contained no list or description of it whatever; *second,* because the persons assuming to make them had no authority to do so. It averred exemption from taxation by the complainant under and by virtue of the same legislation asserted on behalf of the New Mexico & Southern Pacific Company.

All of the defendants joined in a demurrer to the bill, which was overruled, and a decree entered as prayed, enjoining the collection of the taxes. Defendants brought error.

It will be seen from the allegations of the bill that the equities relied upon as grounds for an injunction and relief as prayed rested upon three propositions: *First,* that the property sought to be subjected to the tax was exempt, whether in the hands or possession of the Atchison, Topeka & Sante Fe, or in that of the New Mexico & Southern Pacific Company; *second,* that even admitting the legal validity of the tax attempted to be imposed upon the property, it should have been listed by, and taxed to, the New Mexico & Southern Pacific Company, the owner and lessor, and not to the Atchison, Topeka & Santa Fe Company, the lessees in possession; *third,* that the assessments were not only irregular, but void.

In view of the fact that this court, in what appears to have been a well-considered opinion, has held that the exemption set up and relied upon here on behalf of the New Mexico & Southern Pacific Company was valid, *(Board of Co. Com'rs of Santa Fe Co.* v. *New Mexico & S. P. R. Co.,* 2 Pac. Rep. 376,[1]) and the further fact that the New Mexico & Southern Pacific Company is not before us in this case, we are not disposed to enter into any discussion or consideration of the question of exemption, as applied to that company, until an issue shall be made on a regular assessment of the property claimed to be exempt.

The second proposition, as indicated above, is apparently without serious difficulty in its determination. To avoid the force of the statute on the subject of the taxation of property under lease, counsel for plaintiff in error press upon our attention the fact that the bill does not disclose the terms or conditions of the lease, and that, as a legal consequence, it must be construed most strongly against the

[1] Same case, *ante,* 116.

pleader, and that thus construed the lease will be considered one for a long term, and the conditions favorable to the lessee; that the legal effect of it is and was to convey the unexpired term of the lessor's corporate existence under its charter, or at least the substantial beneficial estate in the leasehold property. In other words, they contend that the lease must be treated, for the purposes of this suit, as a deed, and that, in legal effect, the transfer was a sale, and as such the immunity from taxation, if any ever existed in the lessor company, did not pass to the lessee. There would be strong grounds for this position if the bill could be treated in other respects as silent on the subject of ownership of the property. It, however, in most distinct and emphatic terms, declares that the Atchison, Topeka & Santa Fe Company does not own any portion of the property against which the tax was levied, except the small amount stated. We cannot, by construction, impute title or beneficial estate in the sense for which counsel for plaintiff in error contend, in the face of admitted averments, such as are made here.

Section 1812, Comp. Laws, defines in what way and to what persons property subject to taxation shall be listed and assessed, and concludes as follows: "Property under mortgage or lease is to be listed by and taxed to the mortgagor or lessor, unless listed by the mortgagee or lessee." There is no claim made that the Atchison, Topeka & Santa Fe Company listed this property for taxation, and then became subject to the tax. The demurrer admits the lease and the ownership of the property by the New Mexico & Southern Pacific Company. With these facts conceded, we cannot hold the complainant company bound by the assessments, unless the legislature clearly intended to impose a double tax,—one to the lessor and one to the lessee. We find nothing in the statutes to warrant us in so declaring. The rule on this subject is well stated by Judge COOLEY, as follows:

"It has very properly and justly been held that a construction of the laws was not to be adopted that would subject the same property to be twice charged for the same tax, unless it was required by the express words of the statute, or by necessary implication. It is a fundamental maxim in taxation that the same property shall not be subject to a double tax, payable by the same party, either directly or indirectly, and where it is once decided that any kind or class of property is liable to be taxed under one provision of the statutes it has been held to follow as a legal conclusion that the legislature could not have intended the same property should be subject to another tax, though there may be general words in the law which would seem to imply that it may be taxed a second time. This is a sound and just rule of construction, and it has been applied in many cases where, at first reading of the law, a double taxation might seem to have been intended." Cooley, Tax'n, 165.

The legislature having declared that property under lease should be "listed by and taxed to the lessor," it follows that it could not be "taxed to" any other person or corporation, within the meaning of the statute, unless voluntarily listed by the lessee.

Were the assessments void?   They were returned as follows:

For 1881, A., T. & S. F. R. R. Co.
Valuation of property sworn to,      -       -       -       -    $1,000,000 00
For 1882, A., T. & S. F. R. R. Co.
Assessed value of property,      -       -       -       -       500,000 00
Total value of real estate,      -       -       -       -       -       250,000 00
Total value of personal property,      -       -       -       250,000 00
For 1883, A., T. & S. F. R. R. Co.
Assessed value of property,      -       -       -       -       -       500,000 00
Total value of real estate,      -       -       -       -       250,000 00
Total value of personal property      -       -       -       -       250,000 00

The bill charges that the persons making these assessments willfully, oppressively, and illegally attempted to assess, as against the complainant, property it did not own, to-wit, real estate in the county of Valencia; and did willfully, arbitrarily, illegally, and fraudulently attempt to assess personal property in said county, owned by complainant, greatly in excess of, and out of proportion to, the rate at which all other property was valued for the purposes of taxation in said county, to-wit, 500 per cent. above.

Section 2822, Comp. Laws, requires the assessor of the county, between the first day in March and the first day in May, in each year, to ascertain the names of all taxable inhabitants, and all property in the county subject to taxation.   To this end he is to visit each precinct in the county, and exact from each person a statement in writing, or list, showing separately:   (1) All property belonging to, claimed by, or in the possession or under the control or management of, such person, or any firm of which such person is a member, or any corporation of which such person is president, secretary, cashier, or managing agent.   (2) The county in which such property is situated, or in which it is liable to taxation.   (3) A description of it by legal subdivisions, or otherwise, sufficient to identify it, of all real estate of such person, and a detailed statement of his personal property, including average value of merchandise for the year ending March 1, number of horses and mules, sheep, cattle, swine, and other animals, etc.   Section 2823 provides that the list thus made must be sworn to.   Section 2824 makes it the duty of the assessor to furnish the taxable inhabitant with a blank for such list, which is required to be filled out and delivered to the assessor on or before the last Monday in April.   Then follows section 2825, in the following language:

"If any person liable to taxation shall fail to render a true list of his property, as required by the three preceding sections, the assessor shall make out a list of the property of such person, and its value, according to the best information he can obtain.   And such person shall be liable, in addition to the tax so assessed, to a penalty of twenty-five per cent. thereof, which shall be assessed and collected as a part of the tax of such person."

While it is true that the courts will not be nicely or overscrupulously technical in passing upon questions of mere formality and reg-

ularity in the methods adopted by a class of subordinate officials in the performance of their duties, it is not, however, their duty to consider as done in the manner required by law that which should have been done in so important a matter as the assessment of property for taxation. The legislature is charged with the duty of raising revenue for the support of the government, and it is its peculiar function to lay taxes and provide the means for its collection. To that end it may and has prescribed the initial step in order to subject property to the burdens of taxation, and that step is assessment. A description or list of the property, with a valuation attached, is a necessary act, without which a levy cannot be made and enforced. On this subject Judge COOLEY says:

"Of the necessity of an assessment no question can be made. Taxes by valuation cannot be apportioned without it. Moreover, it is the first step in the proceedings against individual subjects of taxation, and is the foundation of all which follows it. Without an assessment they have no support, and are mere nullities. It is therefore not only indispensable, but in making it the provisions of the statute under which it is to be made must be observed with particularity. * * * As the course unquestionably is prescribed in order that it may be followed, as without it the citizen is substantially without any protection against unequal and unjust demands, the necessity for a strict compliance with all important requirements is manifest." Cooley, Tax'n, 259, 260.

It does not follow, however, that in the assessments of the property of persons who fail to render or return a list that the description or lists made by the assessor, according to his best information, must be strictly accurate, or the valuations correct, but it is essential to the validity of the tax that *some* description or list be made. In this case the assessment for 1881 consisted of a single item, valued at $1,000,000. For 1882 and 1883 the assessor divides the gross sum into two classes,—real and personal,—giving to each a value of $250,-000. Construing these assessments in the most favorable and liberal way, can they be treated as valid? The statute requires real estate to be listed by subdivisions, or some other way sufficient to identify it. It also requires, as we have seen, that a list or description of personal property, as well as its value, must be given. There can be no sort of doubt about the insufficiency of the attempted assessment of the real estate. No deed could be given if sold at delinquent tax sale. No possession could be taken under such a description. There is a value attached to the personal property for the years 1882 and 1883, but there is no effort at description. It is possible to conceive a single piece of railroad property to be worth $250,000, but the owner is certainly entitled to know what piece it is, so that he might, if valued too high, seek his remedy for relief before some proper tribunal or body. Again, the statute makes it the duty of the assessor to ascertain the names of all taxable inhabitants of his county, and *all the property in his county subject to taxation*. This is not an impossibility, so far as taxable inhabitants and tangible property are con-

cerned. This assessment does not purport to be founded upon mere credit. It is founded, as we understand it, upon tangible estate. From no point of view can these assessments be treated as legal and binding upon either railroad company.

It is urged that in any event the judgment below is erroneous because complainant admitted the ownership of property of the value of $183.12, and did not tender any sum before the institution of the suit, nor in its bill. This is not the rule where assessments are void. In a suit to enjoin the collection of taxes, where the original assessment was void, there is no necessity for a tender of such sum as might be equitably due on account of such taxes. The cases in which a tender has been required were those where there was an excessive, as distinguished from a void, assessment. *Albany Nat. Bank* v. *Maher,* 20 Blatchf. 341–343; S. C. 9 Fed. Rep. 884.

The judgment is affirmed.

LONG, C. J., and BRINKER, J., concurred.

### NOTE.

RAILROAD COMPANIES—CONSTRUCTION OF STATUTE. The acts of New Mexico of February 2, 12, and 15, 1878, placed on the same footing, as regards exemption from taxation, all railroad corporations then existing, or thereafter to be organized, under the laws of the territory, for the purpose of building railways in the territory. Those acts were in the nature of a bid for railways to enter the territory, and the offer might have been withdrawn before acceptance; but the actual construction of a line constituted an acceptance, and completed a binding contract between the state and the company. The date of the construction, and not the date of the company's organization, is the date of the contract. For the purposes of taxation "all the property" of a railway corporation, and "all the capital stock" of the same company, are convertible terms, and the exemption of one from taxation is the exemption of the other. Santa Fe Co. v. Railroad Co., (N. M.) 2 Pac. Rep. 376.

INJUNCTION AGAINST THE LEVY AND COLLECTION OF TAXES. Upon grounds of public policy the courts are extremely reluctant to interfere with the assessment or collection of taxes, by means of injunction against the taxing officers, as such a course tends to deprive the government of funds, and cripple its action in all departments. By act of 1885, the legislature of *Michigan* provided that "no injunction shall issue to stay the proceedings for assessment or collection of taxes under this act;" but that the tax might be paid under and recovered by subsequent action, if illegal. And in Eddy v. Township of Lee, 40 N. W. Rep. 792, the act was held constitutional. Under a similar statute in *North Carolina,* which, however, excepts taxes levied for an illegal purpose, it was held that, although certain railroad property had been declared exempt from taxation by the supreme court of the United States, and by the state supreme court, yet an injunction would not issue to restrain the collection of a tax levied thereon, and the only remedy was to recover it back after payment. Railroad Co. v. Lewis, 5 S. E. Rep. 82. So it is said by the supreme court of the United States that, where boards of revision or equalization have been established, the citizen must apply to them for relief against all merely irregular or excessive taxation. Their action is judicial in its nature, and if he does not avail himself of this remedy he is precluded. Stanley v. Albany Co., 7 Sup. Ct. Rep. 1234. In accordance with the view here expressed it is held under the *Wisconsin* statutes that a bill for injunction, because of illegal and fraudulent assessment at too high a rate, could not be maintained, unless it averred that objection thereto and offer of proof had been made to the board of equalization. Bratton v. Town of Johnson, 45 N. W. Rep. 412; Boorman v. Juneau Co., Id. 675. See, also, Duck v. Peeler, (Tex.) 11 S. W. Rep. 1111; Breeze v. Haley, (Colo.) 13 Pac. Rep. 913; Investment Co. v. Charlton, 32 Fed. Rep. 192; County of Noxubee v. Ames, (Miss.) 3 South. Rep. 37. And, where a state board of equalization has made an assessment of a valid tax upon railroad property, a court of equity will not enjoin its collection because it is excessive, since the functions of the board are judicial in their nature. Railroad Co. v. Donoghue, (Ill.) 18 N. E. Rep. 827. In *Pennsylvania,* however, an injunction will be granted when it appears that an assessment for city purposes is greatly in excess of the triennial assessments for state and county pur-

poses, although, in all other respects, the assessment was properly and legally made. Kemble's Appeal, 19 Atl. Rep. 946. And in Stanley v. Albany Co., supra, it is said by the supreme court of the United States that "when the overvaluation of property has arisen from the adoption of a rule of appraisement which conflicts with a constitutional or statutory direction, and operates unequally, not merely on a single individual, but on a large class of individuals or corporations, a party aggrieved may resort to a court of equity to restrain the excess, upon payment or tender of what is admitted to be due. " The assessment complained of in that case was not, however, found to fall within this rule.

ILLEGAL AND VOID TAXES. But where the grievance complained of is not merely an excessive, erroneous, or irregular assessment, but an assessment that is wholly illegal, courts of equity will enjoin the collection, when not restrained by statute, as in *Michigan* and *North Carolina*. Thus it is held in Laughlin v. Santa Fe Co., 3 N. M. 264, 5 Pac. Rep. 817, upon the authority of Crampton v. Zabrinskie, 101 U. S. 601, that an individual tax-payer can maintain a suit in his own name to enjoin an illegal issue of county bonds, or to restrain the levy and collection of illegal taxes by which his property might be imperiled. The function of the board of equalization is merely to correct errors in taxes legally assessed; and therefore injunction is the proper remedy to prevent the collection of a wholly illegal tax, and the plaintiff, in such a case, need not show that he has applied to the board. Davis v. Burnett, (Tex.) 13 S. W. Rep. 613. To the same effect are Railway Co. v. Epperson, (Mo.) 10 S. W. Rep. 478, and Baldwin v. Shine, (Ky.) 2 S. W. Rep. 164.

In *Oregon*, it is said, however, that an injunction will not be granted to restrain the collection of an illegal tax when there is no fraud, and it is not shown that plaintiff will be without redress; but in the same case it is held that where the sheriff is about to collect an illegal tax upon personal property in the hands of an assignee for the benefit of creditors, by seizure and sale thereof, this would be such an interference with the assignee's trust as would justify an injunction. Dawson v. Croisan, 23 Pac. Rep. 257. And in *Michigan*, where a tax (not levied under the statute above referred to as prohibiting injunction under any circumstances) is assessed against personal property of a bank, which property is not liable to taxation at all, and the levy is made in such a way as to interfere directly with the bank's business, an injunction will issue. Bank v. City of Adrian, 33 N. W. Rep. 304.

MULTIPLICITY OF SUITS. Where a tax has been illegally and fraudulently assessed, and its recovery, if paid, would lead to multiplicity of suits, equity will enjoin its collection. Clee v. Sanders, (Mich.) 42 N. W. Rep. 155. Where a bank is required by statute to pay the tax assessed on all its shares, and reimburse itself from the shareholders, it may sue to enjoin the collection of taxes illegally assessed, since it stands in the relation of a trustee to its shareholders, and may protect its *cestui que trust*, and since it is apparent, too, that injunction will prevent multiplicity of actions. Bank v. Parker, 41 Fed. Rep. 402. Multiplicity of suits is a good ground for enjoining the collection of a tax. Railroad Co. v. Neary, (Del.) 8 Atl. Rep. 363.

NECESSITY OF TENDERING TAX LEGALLY DUE. One cannot have relief in equity against illegal taxation without tendering the taxes shown to be legally due. City of Logansport v. McConnell, (Ind.) 23 N. E. Rep. 264; Town of Kissimmee v. Drought, (Fla.) 7 South. Rep. 525. Where the validity of an ordinance imposing a tax was not questioned, and there was no tender of any part of the amount assessed thereunder, it was no abuse of discretion to refuse an injunction to restrain its collection. Augusta Factory v. City Council, (Ga.) 10 S. E. Rep. 359. Where a tax was properly assessed by the assessor, but was illegally raised by others, an injunction will issue to restrain the collection of the illegal part; and where the bill avers that tender has been made of the legal part, the tender need not be repeated in the bill. City of Meridian v. George, (Miss.) 6 South Rep. 619.

But where, because of the illegal method pursued, no valid charge was ever fixed upon the land by an assessment, it is not necessary, in a bill to enjoin collection, to aver or make tender of the amounts equitably due from the lands. Ball v. City of Meridian, (Miss.) 6 South Rep. 645.

In *Kansas*, injunction against the collection of an illegal tax is expressly authorized by statute; but it was held that where a city was about to issue bonds which, in the course of several months, would lead to an alleged illegal assessment, but no steps had yet been taken to make it, an action to enjoin such assessment was premature. Challiss v. City of Atchison, 18 Pac. Rep. 195.